21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Robert JAMES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-1362.
 United States Court of Appeals, Sixth Circuit.
 April 1, 1994.
 
 Before: KENNEDY and MILBURN, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Robert James appeals the District Court's order granting defendant summary judgment and affirming the defendant's denial of his claim for disability insurance benefits under the Social Security Act. On appeal, the plaintiff claims that substantial evidence did not exist to support the defendant's decision that plaintiff retained the residual functional capacity to perform a restricted range of sedentary work. For the reasons stated below, we affirm.
 
 I.
 
 2
 Plaintiff filed an application for disability benefits on September 29, 1989, alleging a disability beginning on June 6, 1988, because of a back injury. Plaintiff claimed that a laundry cart fell on him at work and he has been unable to work since, despite back surgery. Additionally, plaintiff also has problems with his right hand, which was injured in a prior accident.
 
 
 3
 Plaintiff testified that he had trouble sleeping and walking. Specifically, he testified that he can only walk approximately half a block without pain. Plaintiff also testified that he completed the eighth grade and has trouble reading, although he presently attends adult education classes.
 
 
 4
 The Administrative Law Judge ("ALJ") concluded that the plaintiff is illiterate, has borderline intellectual functioning and herniated lumbar disc status post-laminectomy. The ALJ also found that the plaintiff is unable to perform past relevant work as an assembler or janitor. However, the ALJ concluded that plaintiff has the residual functional capacity to perform physical exertion and non-exertion requirements of sedentary work except for:
 
 
 5
 (1) lifting in excess of 10 pounds;
 
 
 6
 (2) not allowing sit/stand option
 
 
 7
 (3) more than occasional standing and walking;
 
 
 8
 (4) more than simple, unskilled entry-level tasks.
 
 
 9
 Under these limitations, a vocational expert testified that approximately 5000 such jobs existed in the Detroit area and 10,000 such jobs existed throughout the State of Michigan.
 
 
 10
 Using the "grid" as a framework together with the testimony of a vocational expert, the ALJ concluded that plaintiff was not disabled from sedentary work, with the limitations noted above. Upon review, the magistrate judge concluded that substantial evidence existed to support the ALJ's decision. The District Court adopted the magistrate judge's report and recommendation. This timely appeal followed.
 
 II.
 
 11
 Judicial review of the defendant's decision is limited to determining whether the defendant's findings are supported by substantial evidence and whether the defendant employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). "This Court does not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984).
 
 
 12
 In determining the existence of substantial evidence, we examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the defendant's decision is supported by substantial evidence, we must affirm even if we would decide the matter differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983).
 
 III.
 
 13
 Initially, the plaintiff argues that the ALJ's assessment of the plaintiff's residual functional capacity is not supported by substantial evidence. Specifically, the plaintiff alleges that the ALJ underestimated the plaintiff's mental impairments. With regard to plaintiff's mental impairments, the ALJ concluded that plaintiff's mental abilities limited him to unskilled entry-level work. However, plaintiff argues that the ALJ did not fairly assess his mental capacity because he failed to consider how his mental impairments impacted on his daily living. We disagree.
 
 
 14
 Substantial evidence supports the ALJ's decision that plaintiff's borderline intellectual functioning and illiteracy do not preclude performance of simple, unskilled entry-level tasks. Indeed, plaintiff had these mental impairments for his entire life; yet, he has a long history of successfully performing other unskilled jobs. Cf. Crisp v. Secretary of Health & Human Servs., 790 F.2d 450, 452 (6th Cir.1986). Additionally, detailed reports from rehabilitation services further support the ALJ's finding that plaintiff can perform simple, entry-level work tasks. These reports show that plaintiff's academic skills were adequate for placement in entry-level positions. J.App. at 198. Based on plaintiff's interests, abilities and aptitudes, the vocational services report states that he could seek employment as "a laundry worker, linen worker, hand washer, cafeteria attendant and food services worker." J.App. at 198. Thus, the ALJ properly considered the impact of plaintiff's intelligence and illiteracy on a daily basis by ruling that plaintiff is limited to simple, unskilled entry-level tasks.
 
 IV.
 
 15
 Next, the plaintiff argues that the ALJ improperly evaluated the evidence concerning the plaintiff's back condition and accompanying pain. Under Sixth Circuit precedent, the defendant uses a two-pronged test to analyze complaints of disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986). Under the first prong, the defendant must determine that there is objective medical evidence of an underlying condition. If there is such evidence, the defendant must determine: "(1) whether the objective medical evidence confirms the alleged severity of the pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severe pain and other functional limitations." Id. at 853.
 
 
 16
 Plaintiff met the first prong of the test by producing evidence of his back impairment. Plaintiff underwent a lumbar myelogram in July of 1988. Plaintiff's motor examination was abnormal, but no focal sensory deficits existed. X-rays indicated a mild narrowing at the L/4, L/5 disc space; however, no obvious subluxation existed and only mild arterial defect at L4/5 existed. This myelogram indicated that plaintiff had a herniated disc. Subsequently, plaintiff underwent a lumbar laminectomy.
 
 
 17
 After surgery, plaintiff was treated by Dr. Gordon Scratch. Approximately six weeks after the surgery, Dr. Scratch noted that plaintiff appeared to be improving. In December 1988, Dr. Scratch concluded that plaintiff could return to light duty work. Dr. Scratch opined that an appropriate job would require sitting for thirty minutes and standing for twenty minutes. Also, plaintiff could drive a car for up to two hours at a time. In August 1989, Dr. Scratch noted the same restrictions and continued improvement. However, a December 1989 CT scan showed a "mild lateral bulge of the disc" at the L5-SI level, the discs at L3-4 and LR-5 were completely normal.
 
 
 18
 The ALJ concluded that the medical evidence did not support plaintiff's allegations of severe, disabling pain and limitations, and did not demonstrate the existence of a condition that would reasonably be expected to produce severe or disabling pain or limitations. We agree. As the ALJ noted, the plaintiff is not taking any strong pain medications and is not involved in physical therapy. Additionally, the plaintiff's treating physician has not emphasized the plaintiff's pain. Also, the plaintiff has maintained a full range of daily activities. Thus, we agree that plaintiff's allegations of pain were inconsistent with his treatment and the ALJ did not err in evaluating the medical evidence.
 
 
 19
 The plaintiff also contends that the ALJ erred by finding that he can occasionally stand or walk and that he only needed to be able to change positions every thirty to sixty minutes. Plaintiff relies on Dr. Scratch's statements that plaintiff could sit for only thirty minutes at a time and stand for twenty to thirty minutes without having to change positions. We find no error in the ALJ's assessment that plaintiff could sit or stand for slightly longer periods than Dr. Scratch indicated. Dr. Scratch himself acknowledged that plaintiff could drive a car for up to two hours at a time. Also, reports from the rehabilitation services indicate that plaintiff could sit up to ninety minutes without complaints of pain. Additionally, plaintiff told both an agency interviewer and a psychologist that he often went for walks. Thus, substantial evidence supported the ALJ's decision that plaintiff could perform work activities involving occasional walking or standing and permitting him to alternate between sitting and standing every thirty to sixty minutes.
 
 V.
 
 20
 Before the ALJ, plaintiff asserted that he experienced pain, numbness and manipulative difficulties with his hands. However, the ALJ concluded that plaintiff's complaints were not supported by the objective medical evidence and that plaintiff's allegations did not preclude performance of sedentary work activities. The record permits that conclusion. Plaintiff suffered a palm laceration in May 1985, but a June 1985 medical report states that plaintiff's hand is healing well. Additionally, plaintiff had surgery for carpal tunnel syndrome on his left hand in October 1985. Again, a November 1985 medical report states that the plaintiff is "doing quite well." The May 1986 report states that plaintiff's hand was well-healed and functioning. The record simply does not contain evidence of any problems plaintiff experienced with his hand or any notation that he mentioned any difficulties to his doctor. Thus, we conclude that substantial evidence supports the ALJ's assessment of plaintiff's hand pain.
 
 VI.
 
 21
 Plaintiff also raises various arguments regarding the ALJ's hypothetical questioning of the vocational expert, adequacy of the vocational expert's testimony, jobs that the vocational expert identified and the existence of unskilled sedentary jobs with a sit/stand option. However, the plaintiff made no objections to the magistrate judge's report and recommendation as to these assertions. Thus, these issues may not be raised on appeal. Crum v. Sullivan, 921 F.2d 642, 645 (6th Cir.1990).
 
 VII.
 
 22
 For the reasons stated, we AFFIRM the District Court's order granting summary judgment for the defendant and affirming defendant's denial of social security benefits.